# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

EDMUND WRIGHT,

    Petitioner,

vs.                                                                   Civ. No. 99-1184 MV/WWD

JOE R. WILLIAMS, et al.,

    Respondents.

## MAGISTRATE JUDGE'S AMENDED PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

    1.  THIS MATTER comes before the Court upon Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner, who is incarcerated and is proceeding *pro se* and *in forma pauperis*, has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner is confined pursuant to the judgment, sentence and commitment of the Twelfth Judicial District in the District Court of Otero County for the crimes of possession of cocaine with intent to distribute, several counts of battery on peace officers, and possession of drug paraphernalia.  Petitioner was sentenced as a habitual offender to a total of forty-six and a half years incarceration time.

    2.  Petitioner alleges three grounds for relief in his federal petition:

(1) that the trial court erred in failing to grant the motion to suppress;

(2) that he was illegally sentenced for multiple convictions as a habitual offender where the conduct arose from a single transaction; and

(3) that his enhanced sentence under the habitual offender statute is illegal pursuant to "Rule 11-609."

3. In proposed findings filed June 1, 2000, I recommended that this Court grant Respondent's Motion to Dismiss and dismiss the petition without prejudice, on the grounds that Petitioner had not exhausted several claims for ineffective assistance of counsel which were raised for the first time in an amended petition.  See docket # 16.  Petitioner was given the option of notifying the Court whether he wished to proceed with only the exhausted claims and cautioned about risking the loss of a chance to have those unexhausted claims heard later if he did proceed. See Prop. Findings, ¶ 6.

4. Petitioner filed objections in which he has waived the unexhausted claims and wishes to have his petition heard on the basis of the exhausted claims alone.  Obj., ¶ 4.  The initial findings, therefore, are amended in order to address Petitioner's exhausted claims on the merits.

**First Alleged Error - Motion to Suppress**

5. In his first ground for relief, Petitioner does not challenge the initial stop of his car, but rather that the referral to the secondary area and continued detention during the dog sniff were done without reasonable suspicion or valid consent.  Petitioner's arguments on this ground are virtually identical to those raised on appeal, since he attaches relevant portions of his brief-in-chief on direct appeal.

6. I recite the factual background as laid out by in the state court of appeals memorandum opinion, which reviewed the facts "in the light most favorable to the district court's ruling. . . ."  Ans., Ex. L at 2.

> Petitioner was stopped at a border patrol checkpoint south of Alamogardo and was questioned by an agent who asked where he was going that evening. Defendant responded that he was going to visit his brother in Alamagordo. The agent, who had eight years of training and experience, testified that he then detected a strong smell of air freshener, which is often used to mask the odor of

illicit drugs. Defendant told the agent that he did not know his brother's address but knew how to get to his brother's house. Yet when asked to explain how, he stated that he would have to call and ask for directions. The agent testified that in past narcotics cases, people had given a general location of where they were going but could not give an exact address.

Defendant also told the agent that he resided in Las Cruces. But when the registration form showed the owner to be a Yolanda Wright of Deming, Defendant stated that Yolanda was his wife and he lived with her in Deming. Also, the receipt for the car indicated that it had recently been purchased. In the officer's experience, recently purchased cars were often used to transport narcotics.

The agent then asked Defendant if he could walk a border patrol dog around the car. Defendant was directed to drive to the secondary area, where he got out of the car. During the dog sniff the dog alerted. After a cursory search of the vehicle did not reveal any drugs, the agent asked Defendant to step inside the trailer for a patdown search. Narcotics and a pipe were found on Defendant's person.

7. At trial, Petitioner moved to suppress evidence on grounds of an illegal search. The trial court denied the motion, stating that Agent Sims' observations and Petitioner's statements provided "suspicious circumstances," if not reasonable suspicion, for further questioning. The court pointed specifically to the strong odor of air freshener emitting from the car; Wright's inability to provide an address for the brother he was purportedly visiting; ownership of the car which had been recently purchased; and discrepancies between his residency in Las Cruces and his wife's (the car's registered owner) in Deming. Ans., Ex. D.

8. The trial court also note that Agent Sims had "properly obtained consent from Wright to walk the drug sniffing dog around the car" and that the dog's alert provided probable cause for the subsequent pat-down search and arrest. The court of appeals affirmed the decision, finding that reasonable suspicion existed to continue Wright's detention after the initial stop and that once the dog alerted, probable cause existed to support the remaining investigative activities. Ex. L at 3-4.

9. Federal habeas corpus relief is not available to redress violations of the Fourth Amendment exclusionary rule when defendant has had a full and fair opportunity to litigate the claim. See Stone v. Powell, 428 U.S. 465 (1976); Withrow v. Williams, 113 S.Ct. 1745 (1993). In this case, Petitioner had a hearing in state court on a motion to suppress addressing the very issue he raises here. The issue was considered by the trial court, then raised again and carefully considered on its merits on direct appeal. See Smallwood v. Gibson, 191 F.3d 1257, *1265 (10th Cir. 1999) (agreeing with district court that Stone barred habeas relief on fourth amendment claim where petitioner had such opportunity in that he had a motion to suppress the evidence resulting from his alleged unlawful seizure, objected to its admission at trial, and raised the issue on direct appeal, where court applied appropriate Supreme Court precedent and found no unconstitutional detention).

10. I find that this ground for relief should be denied on the basis that Wright has fully and fairly litigated this claim in state court. At the same time, I note that the state court relied on New Mexico law in making its determination, although an analysis under federal law would clearly result in the same findings, as discussed below.

11. Also, if this claim were not barred under Stone, the proper analysis would be one which also relied on federal law but which deferred to state court findings, since Wright filed his federal petition for habeas corpus relief after the April 24, 1996 effective date of AEDPA ("Antiterrorism and Effective Death Penalty Act of 1996"). Under that analysis, this Court may not grant Petitioner habeas relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

4

determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d).  Additionally, "a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).

 12. Under federal law, no individualized suspicion is necessary to stop, question and then selectively refer motorists to a secondary inspection checkpoint.  <u>United States v. Martinez-Fuerte</u>, 428 U.S. 543, 563 (1976), <u>cited in</u> <u>U.S. v. Sanders</u>, 937 F.2d 1495, 1499 (10th Cir. 1991) (other citations omitted).  Border patrol agents have "virtually unlimited discretion to refer cars to the secondary inspection area."  <u>Sanders</u> at 1499 (citing <u>INS v. Delgado</u>, 466 U.S. 210, 224 n. 6 (1984) (Powell, J., concurring)).

 13. Under the standard set by the United States Supreme Court, then, Agent Sims' referral to the secondary area did not violate Wright's Fourth Amendment rights because it was part of an initial stop which was within this "virtually unlimited discretion."  Further, a canine sniff is not a "search" within the meaning of the Fourth Amendment.  <u>U.S. v. Place</u>, 462 U.S. 696, 708 (1983).  Therefore, since the referral to the secondary area was lawful under the initial stop and the dog sniff is not considered a "search," then reasonable suspicion was not required for either the referral of Petitioner to the secondary area or the walkaround.  See <u>U.S. v. Massie</u>, 65 F.3d 843, 848 (10th Cir. 1993) (consent not required for dog sniff of lawfully detained vehicle but is required for detention beyond the initial period).

 14. The state court of appeals analyzed the issue by looking at whether the totality of the circumstances supported a finding "that the agent acted with reasonable suspicion in detaining Defendant beyond the initial questioning."  <u>Ex. L. at 2</u>.  The court most likely found it necessary

to focus on this approach because under New Mexico law, referral of a vehicle to the secondary area at a border checkpoint "must be based on at least reasonable suspicion of wrongdoing." State v. Estrada, 111 N.M. 798, 799 (Ct.App. 1991); see also State v. Guzman, as: 118 N.M. 113, 117 (Ct.App.), cert.denied, 118 N.M. 695 (1994).[1]  At the same time, the court of appeals pointed out that in this case, once justification was found to extend Defendant's detention for further investigation at the secondary area, "no special additional justification was necessary to support a dog sniff of the vehicle's exterior," Ex. L at 3,[2] since "[s]uch a sniff does not constitute a search." Id. (citing State v. Villanueva, 110 N.M. 359, 361-62 (Ct.App. 1990)).

15. The difference between state and federal law regarding whether or not reasonable suspicion was required in order to refer Wright to a secondary area is a distinction without a difference, since under a federal law analysis, reasonable suspicion did exist under the circumstances of the case, justifying what Petitioner characterizes as a continuation of the initial detention.

16. Under both federal and state law, the Court examines the totality of the circumstances in order to determine whether reasonable suspicion exists.  See United States v.

---

[1] The court in Estrada acknowledged the line of federal cases which do *not* require reasonable suspicion to exist before referral to a secondary area, but distinguished those cases by noting that either the questioning at the secondary area was equivalent to the brief questioning performed at the primary area in the case at bar, or because referral to a secondary area in those cases occurred "only after suspicions were raised by circumstances revealed during the initial questioning" so that continued detention would have been justified in any case.  At 819.

[2] Although it would appear that state law tracks federal law regarding fourth amendment search and dog sniffs, a very recent New Mexico case seems to depart from federal law as well as a previous line of state case law.  In State v. Cleave, No. 20036, 2000-NMCA-071, 2000 WL 1160478 (N.M.App. Jun. 19, 2000) (NO. 20036), the court of appeals found that even where there is consent to an inspection of a car trunk, further justification or consent is required before drug sniffing dog can sniff the open trunk.  Certiorari has been granted on Cleave.

Sokolow, 490 U.S. 1, 8, (1989);   U.S. v. Shareef, 100 F.3d 1491, 1505 (10th Cir. 1996) (citations omitted); see also Estrada, 111 N.M. at 820 (misplaced spare tire alone not enough of a suspicious circumstance to justify continued detention of defendant) (citing U.S. v. Cortez, 449 U.S. 411 (1981)); State v. Porras-Fuerte, 119 N.M. 180 (Ct.App.1994) (reasonable suspicion found not to exist where persons were traveling by car late at night to ski area, were individuals not wearing bulkier ski clothing and where luggage was absent from back seat).

17.   Also, in determining the reasonableness of an investigative detention, "common sense and ordinary human experience must govern over rigid criteria." U.S. v. Walraven, 892 F.2d 972, 975 (10th Cir. 1989) (quoting U.S. v. Sharpe, 470 U.S. 675, 685 (1985)); U.S. v. Alvarez, 68 F.3d 1242, 1244 (10th Cir. 1995) (courts are to view the officer's conduct through filter of "common sense and ordinary human experience" and that courts should "avoid unrealistic second-guessing of police officers' decisions." Id. (citations and quoted case omitted).

18.   The same facts which supported findings by the state trial court and the court of appeals that reasonable suspicion existed which justified the further detention of Petitioner, also support the same finding under federal law.  The odor of air freshener, for example, can establish articulable suspicion at a border patrol checkpoint under both state and federal law. See State v. Guzman, 118 N.M. 113, 114-15 (1994) (citing various state and federal cases); U.S. v. Sanchez-Valderuten, 11 F.3d 985 989 (10th Cir. 1993) (odor of deodorizer was factor in establishing reasonable suspicion after highway stop); cmp. United States v. Ledesma-Dominguez, 53 F.3d 1159 (10th Cir.1995) ("masking odor" typically used by drug smugglers supported stop of vehicle and prompted request to do a canine search), with United States v. Fernandez, 18 F.3d 874, 878-81 (10th Cir.1994) (no reasonable suspicion because there was no masking odor, evasive

action, or other objective indication of contraband).

   19.   The circumstances in this case, based on the agent's observations during the initial stop and Wright's responses to initial questioning concerning his destination, ownership of the car and address, support the state court's findings that an articulable suspicion existed on the part of Agent Sims that Petitioner had committed.  See Florida v. Royer, 460 U.S. 491, 498 (1983).

   20.   Because Petitioner raised this first alleged error in state court both at the trial level in a suppression hearing, and then again on direct review where it was carefully considered, and because the state law applied by the state court is consistent with federal law in concluding that this issue has no merit, I find that under the standard set out by Stone v. Powell, Petitioner has fully and fairly litigated this claim in state court and is precluded from having this issue reviewed under habeas review.  Alternatively, I also note that an identical result is required under a deferential analysis to state court findings under AEDPA.  See above, ¶ 11.

*Consent*

   21.   As part of this first error, Petitioner also challenged in state court, and by attaching his appeal brief to the present petition, challenges here, the validity of his consent, specifically contending that continued detention was not justified because the consent was tainted as an "involuntary acquiescence to an armed federal agent."  Petitioner argues that in reply to Agent Sims' inquiry regarding a search alongside the car, he informed the agent that they would need to call his wife, since the car belonged to her.  Agent Sims responded that he had the authority to consent if he wished.  Wright characterizes his own statement as a refusal to the request to search, and the agent's response as "badgering" because the agent then failed to call Wright's wife.  See Ans., Ex. I at 12; Ex. J at 14.

22. Even assuming it would be necessary to view the situation as one of a "continued detention" -- which is not required under federal law, see ¶ 14, above -- there is no merit to this contention. Whether or not consent was present, Petitioner's Fourth Amendment rights were not violated because the agent had reasonable suspicion which justified a continued detention beyond the initial questioning. See Sanders, 937 F.2d at 1499 (detention at permanent checkpoints that continues past questioning regarding suspicious circumstances, in addition to citizenship matters must be based on the individual's consent or probable cause or upon a valid investigative detention). For this reason, the state court of appeals found that it did not need to address the issue of consent, Ex. L at 4, and this Court also need not address the issue.[3]

*Violation of State Constitution*

23. Also attached to the habeas petition is that portion of the appeals brief alleging a violation of the New Mexico state constitution, Art. II, Section 10, regarding search and consent. Ans., Ex. I at 13. A federal habeas corpus court's review is limited to deciding whether a state court conviction violated either the United States Constitution, federal law or treaty. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Thus, this issue is not cognizable under federal habeas review. As an allegation that a state law violates the federal constitution, it should be clear from the above discussion that this position has no merit.

24. Based on the foregoing findings, relief should be denied on the first ground raised by

---

[3] Even on its merits, the exchange between himself and Agent Sims would hardly qualify as one of duress and coercion, looking at the surrounding circumstances. See State v. Duffy, 126 N.M. 132 (1998) (determination whether consent is voluntary, including whether it was a product of duress or coercion is based on "the totality of all the surrounding circumstances") (citing Schneckloth v. Bustamonte, 412 U.S. 218, 226-29 (1973)).

Petitioner in this federal petition.

**Second Alleged Error - Habitual Offender and Multiple Convictions**

25.  Petitioner alleges that he was illegally sentenced for multiple convictions as a habitual offender where the conduct arose from a single transaction.  Wright was sentenced to an additional eight years for each of Counts I through IV.  He specifically contends that Counts II through IV (battery upon a peace officer) should not have been considered as separate convictions for purposes of habitual offender enhancements, but rather as one single conviction since the conduct underlying all three counts arose from the same transaction.[4]

26.  On this issue, the state court summarily found that it was proper to apply habitual offender enhancements to each new felony conviction to which Defendant was sentenced.  Ans., Ex. HH at 2.

27.  I first note that Petitioner's claim is not cognizable when viewed as a violation of the state habitual offender statute, since federal federal habeas relief is not available for violations of state law.  See Lujan v. Tansy, 2 F.3d 1031, 1035-36 (10th Cir. 1993) (not recognizing alleged violation of state habitual offender statute).  Also, although it is not clear whether Petitioner alleges that enhancement of his sentence in itself under the state statute constitutes multiple punishment, this allegation would be meritless.  Habitual offender enhancement applied more than once is not considered separate punishment.  New Mexico's habitual offender statute does not create a new offense and thus "the procedure that it mandates is merely a sentencing procedure, not a trial."  Montoya v. Shanks, 55 F.3d 1496, 1498 (10th Cir. 1995).

---

[4] Petitioner does not challenge the eight year enhancement based on three prior convictions, nor the enhancement for Count I (trafficking with intent to distribute).

28. Petitioner also frames the issue as an allegation of the Double Jeopardy Clause based on multiple convictions arising from the same conduct. The Double Jeopardy Clause of the Fifth Amendment protects defendants from repeated prosecutions or multiple punishments for the same offense. United States v. Dinitz, 424 U.S. 600, 606 (1976).[5] Although cognizable as a federal habeas claim, it has no merit even when looking favorably at the facts taken from Petitioner's own docketing statement.

29. Subsequent to the alert by the drug-sniffing dog, Agent Sims conducted a pat-down body search of Petitioner in the border patrol holding cell. More than once, Wright did not comply with the agent's instructions to keep his hand on the wall but rather kept moving his left hand down to his waist. In his efforts to force Wright down to the floor, a struggle ensued which lasted three to four minutes. Agent Sims found it necessary to call on another agent for help and it eventually took three agents to subdue Wright. Agent Sims testified that Wright bit him on the thumb. Ex. G, at 3. During the search, agents retrieved three cellophane baggies which later tested positive for cocaine.

30. Contrary to Petitioner's presentation of the issue, habitual offender enhancements for Counts II, III and IV do not offend the Double Jeopardy clause of the United States Constitution, because Wright was not prosecuted or sentenced more than once for the same offense. Petitioner concedes that the underlying events regarding the struggle in the border patrol holding cell were presented at trial as separate acts, each one involving a different officer.

---

[5] The issue here is one of multiple violations of a single statute rather than violations of multiple statutes that may or may not be deemed the same offense for double jeopardy purposes, which would be analyzed under Swafford v. State, 112 N.M. 3, 13 (1991) and Blockburger v. U.S., 284 U.S. 299 (1932).

31. In New Mexico, multiple convictions may result from a single criminal episode if more than one individual was harmed. See State v. Landgraf, 121 N.M. 445 (Ct. App.) (affirming convictions on three counts of vehicular homicide resulting from single incident of driving recklessly while intoxicated), cert. denied, 121 N.M. 375 (1996); see also Herron v. State, 111 N.M. 357, 361 (1991) (stating in dicta that "multiple victims will likely give rise to multiple offenses"); State v. Moore, 109 N.M. 119 (Ct. App.) (citing with approval cases that hold that multiple convictions for offenses arising from single act are proper and affirming conviction for two robberies and false imprisonment of couple who were in store at same time store was robbed), cert. denied, 109 N.M. 54 (1989) (citing State v. Dunlop, 721 P.2d 604 (Alaska 1986) (noting that majority of states holding that multiple punishments for multiple victims of single criminal act do not violate double jeopardy)); State v. James, 631 P.2d 854, 855-56 (Utah 1981) (stating that "offenses committed against multiple victims are not the same for double jeopardy purposes even though they may arise from the same criminal episode"); State v. Harris, 101 N.M. 12, 19 (Ct.App. 1984) (burglaries in different offices at same time in same building counted as separate crimes).

32. Therefore, I find that the state court findings on this issue should be given deference and relief on Ground Two denied.

**Third Alleged Error - Rule 11-609**

33. Petitioner alleges that his enhanced sentence under the habitual offender statute is illegal pursuant to SCRA 11-609, specifically contending that enhancement of his felony convictions are illegal because they are more than ten years old. The state court summarily dismissed the claim, noting that Rule 11-609 applies to impeachment of the credibility of

witnesses and does not apply to enhancement of the sentence as a habitual offender. Ans., Ex. HH at 1.

34. This claim also has no merit. As an issue involving a state statute, it is not cognizable under federal habeas review. See Beachum v. Tansy, 903 F.2d 1321, 1330 (10th Cir. 1990) ("In a habeas corpus action the significant inquiry is not whether a state court has applied properly the rules of evidence but whether an error of constitutional magnitude has been committed"). I also note there is no time limit for use of prior convictions under the habitual offender statute, N.M.S.A. 1978 §31-18-17. Thus, relief should be denied on Ground Three.

*Evidentiary Hearing*

35. In his objections to the intial proposed findings, Petitioner requests an evidentiary hearing and counsel. The latter should be denied. Habeas corpus is a civil action and there is no constitutional right to the assistance of counsel in such proceedings in federal court. Plaskett v. Page, 439 F.2d 770 (10th Cir. 1971).[6]

36. Given my findings regarding the disposition of this case, Petitioner's request for an evidentiary hearing should be denied. Petitioner has not satisfied the threshold requirements for a hearing under AEDPA's amendments to § 2254(e)(2), i.e., has not presented either a new rule of constitutional law or a factual predicate that could not have been previously discovered through the exercise of due diligence.

**Recommendation**

I recommend Petitioner's application for Writ of Habeas Corpus be denied and that this cause be dismissed with prejudice.

---

[6] A prior request for counsel was denied previously. See docket # 14.

Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations.  A party must file any objections with the clerk of the district court within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.

_____
UNITED STATES MAGISTRATE JUDGE